UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MOUNTAINEER INVESTMENTS, L.L.C.                                                PLAINTIFF

VS.                                         CIVIL ACTION NO. 3:08cv695-DPJ-JCS

UNITED STATES OF AMERICA, ET AL.                                      DEFENDANTS

**<u>ORDER</u>**

This matter is before the Court on the cross motions for summary judgment filed by Defendants United States of America and Internal Revenue Service (IRS) (collectively "the Government") [21] and Plaintiff Mountaineer Investment, L.L.C. (Mountaineer) [23]. The Court, having fully considered the parties' submissions and the applicable authority, finds that Plaintiff's motion should be granted and Defendants' motion granted in part and denied in part.

I.      Facts/Procedural History

This case relates to the priority to be given the parties' liens on two adjacent properties located in this judicial district. There is no dispute that Mountaineer acquired a first lien in January 2007, when it purchased notes from another lending institution that were secured by the properties. At the time, the properties were also subject to three notices of federal tax liens giving the Government a subordinate lien.

In the summer of 2007, Mountaineer initiated a non-judicial foreclosure and sent the IRS notice at its local Jackson, Mississippi office via first class mail. The notice was legally insufficient. After complying with publication requirements under Mississippi law, Mountaineer acquired both properties at the foreclosure sale for $1,000 each. The Government now takes the position that Mountaineer's senior lien merged with the fee title it acquired; therefore, the IRS

holds the priority lien. The parties have indicated that the matter should be decided on the briefs, and the Court finds that it is ripe for decision.

II.     Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

III.  Analysis

  A.  Jurisdiction

Subject matter jurisdiction is not disputed, but Defendants claim that the Court lacks personal jurisdiction over the IRS and that this matter filed under 28 U.S.C. § 2410 must be brought exclusively against the United States. *See* 28 U.S.C. § 2410(a). The issue is not disputed and appears meritorious. Accordingly, the IRS is dismissed. Jurisdiction otherwise exists.

  B.  Priority of the Liens

The Government contends that under Mississippi property law, Mountaineer's priority lien merged with the fee title when it acquired the properties following non-judicial foreclosure and that the junior federal tax liens were therefore elevated to priority status. However, Mississippi long ago concluded that

> [t]he authorities appear to be quite unanimous in holding that the lien of a mortgage is not merged in the legal title acquired by the mortgagee, where it is his intention that it shall not so merge; and, in the absence of evidence, his intention will be presumed to accord with his interest, that there is no merger of the mortgage as against subsequent incumbrancers, when the mortgagor conveys the land to the mortgagee, where it would be inequitable, or where there is an express agreement of the parties that the lien of the mortgage shall remain alive; that there is no such merger when the interests and situation of the parties clearly indicate that there is no intention to let in junior liens ahead of the mortgage.

*Cade v. Toler*, 124 So. 793, 794 (Miss. 1929). Said differently, "if no intention . . . was expressed by the parties thereto, yet there exists an encumbrance on the land inferior to that acquired by the owner of the fee, equity will presume, if his best interest requires, that there was no intention for the merger to take place, and the merger will not be permitted." *Conn. Gen. Life Ins. Co. v. Planters Trust & Savings Bank*, 181 So. 724, 726 (Miss. 1938) (citations omitted).

3

1.  Unclean Hands

According to the Government, Mountaineer is not entitled to invoke these equitable principles because it comes to the court with "unclean hands."[1] The "unclean hands" maxim is often stated in the following language: "[H]e who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted." *Ellzey v. James*, 970 So. 2d 193, 195–96 (Miss. Ct. App. 2007) (quoting *Thigpen v. Kennedy*, 238 So. 2d 744, 746-47 (Miss. 1970)). Here, the Government contends that Mountaineer's hands are unclean for two reasons: (1) it failed to give the IRS proper statutory notice of the sale, and (2) it failed to better advertise the foreclosure sale that resulted in a $1,000 purchase price for the two properties. Both contentions are legally insufficient.

As an initial matter, the Government is correct that Mountaineer failed to meet its statutory duty to provide notice of the non-judicial foreclosure sale. *See* 26 U.S.C. § 7425(c)(1). Notice of a sale "shall be given (in accordance with regulations prescribed by the Secretary) in writing, by *registered or certified mail or by personal service*, not less than 25 days prior to such sale, to the Secretary" of Treasury. *Id.* (emphasis added). Moreover, such notice must be directed "to the district director (marked for the attention of the chief, special procedures staff) for the internal revenue district in which the sale is to be conducted." 26 C.F.R. § 301.7425-3

---

[1] This argument represents a departure from the IRS's position in other cases. Because the IRS had properly filed notice of its liens in this case and yet received defective notice of the sale, the sale was "made subject to and without disturbing such lien or title." 26 U.S.C. § 7425(b)(1). In the past, the Government has argued that § 7425(b)(1) creates priority for the federal tax lien when proper notice is not provided. That position contradicts the plain language of the statute and has been uniformly rejected. *See Tompkins v. United States*, 946 F.2d 817, 819 (11th Cir. 1991); *United States v. Colorado*, 872 F.2d 338, 339-40 (10th Cir. 1989); *First Am. Title Ins. Co. v.United States*, 848 F.2d 969, 973-74 (9th Cir. 1988). In the present case, the Government concedes that § 7425(b)(1) is not a priority statute.

(2006). Here, the notice was mailed via first class mail to the wrong IRS office and was therefore technically deficient. However, a mistake alone is not sufficient to trigger the "unclean hands" maxim.

In *O'Neill v. O'Neill*, the Mississippi Supreme Court explained the meaning of "unclean hands," stating that "[t]he meaning of this maxim is to declare that no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by *wilful inequity*." 551 So. 2d 228, 233 (Miss. 1989) (emphasis added), *cited in Richardson v. Cornes* (*In re Estate of Richardson*), 903 So. 2d 51, 55 (Miss. 2005). "[I]t is not necessary for the conduct to be of such a nature as to be punishable as a crime or even to justify legal proceedings of any character. Any wilful act concerning the cause of action which can be said to transgress equitable standards of conduct is sufficient to invoke the maxim." *Thigpen*, 238 So. 2d at 747. Numerous cases have declined to apply the maxim absent proof of a wilful act. *See, e.g.*, *Deliman v. Thomas*, 16 So. 3d 721 (Miss. Ct. App. 2009) (refusing to apply "unclean hands" were there was "no evidence of 'wilful misconduct'"); *Farrior v. Kittrell*, 12 So. 3d 20 (Miss. Ct. App. 2009) (finding that "unclean hands" maxim did not apply in absence of a finding of wilfulness); *Brawdy v. Howell*, 841 So. 2d 1175, 1180-81(Miss. Ct. App. 2003) (same); *Collins v. Collins*, 625 So. 2d 786, 789 (Miss. 1993) (holding that there must be a "wilful act concerning the cause of action").

Here, the Government essentially concedes the lack of record evidence supporting a wilfulness finding as to the deficient notice. The Court's own review of the record revealed that Mountaineer hired an attorney to handle the non-judicial foreclosure; the attorney mistakenly failed to follow the technical notice requirements; and, after the mistake was discovered,

5

Mountaineer and the attorney investigated the matter and attempted to rectify it. Def.'s Motion [21], Ex. 13, (Spence Depo.) at 31-34. The Court finds nothing in the record to suggest that the error was in any way wilful.

As for Mountaineer's efforts to market the property prior to obtaining it in the sale, there is no dispute that Mountaineer strictly followed Mississippi statutory law and published the Notices of Foreclosure Sale for four consecutive weeks. *See* Miss. Code Ann. § 13-3-1 *et seq.* While the prices were obviously low, there were no other bidders, and it is worth mentioning that the ultimate sale of these properties will not cover Mountaineer's losses. It is not enough for the Government to simply claim that Mountaineer acted wilfully with respect to the sales. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co.*, 276 F.3d at 759. Instead, Defendants must come forward with competent record evidence, and in this case, the Court finds as a matter of law that the record does not reflect wilfulness on the part of Mountaineer.[2]

---

[2] Although the Court has read the entire record, the parties attached portions of depositions that were not directly cited. To the extent the Court may have overlooked evidence not referenced in the memoranda, it must be noted that the Court is "under no duty 'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir. 2008) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)); *see also Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

### 2. Other Equitable Principles

The Government urges an alternative argument based on "the related principle 'that no man shall, in a court of justice, take an advantage which has his own wrong as a foundation for that advantage.'" Def.'s Mem. [27] at 2 (citing *Thigpen*, 238 So.2d at 746-47). This merely begs the question of what constitutes a "wrong." The Mississippi Supreme Court answered that question in *Estate of Dykes v. Estate of Williams*, observing, "*To employ this maxim*, the conduct need not be of such a nature as to be criminal or justify any legal proceedings, but there must simply be a "*wilful act* concerning the cause of action which can be said to transgress equitable standards of conduct." 864 So. 2d 926, 932 (Miss. 2003) (emphasis added) (quoting *Thigpen*, 238 So. 2d at 746-47); *see also Ellzey v. James*, 970 So. 2d 193, 196 (Miss. Ct. App. 2007). Defendants have demonstrated a mistake, but there is no evidence of a wilful act that "transgress[es] equitable standards of conduct." *Id.*

Finally, the Government cites *Connecticut General* for the proposition that "a merger will not be prevented in equity when fraud *or* wrong would result therefrom." 181 So. at 726 (emphasis added). The Government contends that this language focuses on the result of the equitable relief and alleviates the need to show any mental state (i.e., wilfulness). It further contends that a wrong would result in this case absent merger because the Government would be denied the statutory right of redemption under 26 U.S.C. § 7425(d) and 28 U.S.C. § 2410(d). To begin with, preventing "fraud or wrong" cannot be viewed in a post-relief vacuum. Preventing "fraud" necessarily implicates preventing the fruition of a wilful act. So too, Mississippi has equated the word "wrong" in the equitable context with a "wilful act." *Estate of Dykes*, 864 So. 2d at 932. Moreover, the trilogy of circuit court decisions that examined technical non-

7

compliance with the notice requirements of § 7425(b)(1) clearly explain that Congress did not intend to elevate junior federal tax liens simply because notice was not properly provided to the IRS. *See Tompkins*, 946 F.2d at 819; *Colorado*, 872 F.2d at 339-40; *First Am. Title Ins. Co.*, 848 F.2d at 973-74. For all of these reasons, the "fraud or wrong" is not apparent.

In conclusion, the Government has cited no cases applying the boilerplate language it cites in a context analogous to the instant action. Moreover, it has cited no cases suggesting that a senior lienholder loses priority to a junior federal tax lien by failing to give proper statutory notice of a sale. The Court finds as a matter of law that Mountaineer may rely on the equitable presumption against merger–assuming it needs to rely on the presumption–and that its liens take priority.[3]

C. Amount of Mountaineer's Lien

Finally, the Government argues that, pursuant to 26 U.S.C. § 6323(h)(1), Mountaineer "would be entitled to enforce those interests against the United States' tax liens only to the extent of the amount that Plaintiff paid to acquire those interests, and not the amounts that currently are due under the terms of the underlying loans." Def.'s Mem. [22] at 9. Section 6323(h)(1) defines the term "security interest," stating in its entirety as follows:

> **Security interest.**--The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has

---

[3]Mountaineer contends that "unclean hands" is of no moment because it offered proof of its intent not to merge its interests and is not, therefore, relying on any equitable presumptions. Pl.'s Mem. [24], Ex. B at 6; *see Cade*, 124 So. at 793 (holding that "*in the absence of evidence*, his intention will be presumed to accord with his interest, that there is no merger of the mortgage as against subsequent incumbrancers") (emphasis added). The argument appears correct but is not well addressed by the parties and will not be relied upon as an alternative basis for this order.

8

> become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

From this, the Government contends that "section 6323(h)(1) does not merely describe *when* a security interest exists for purposes of competition with a federal tax lien. It also defines the *extent* to which a state-law-created security interest exists when it is competing against a federal tax lien." Def.'s Reply [27] at 4.

"When courts interpret statutes, the initial inquiry is the language of the statute itself." *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 448 (5th Cir. 1995). It is an elementary rule of statutory construction that "the words of a statute will be given their plain meaning absent ambiguity." *Tex. Food Indus. Ass'n v. U.S. Dep't of Agric.*, 81 F.3d 578, 582 (5th Cir. 1996).

Here, the Government focuses on the phrase "to the extent," suggesting that this dictates the extent of a security interest. However, the statute must be read as a whole because "a word is known by the company it keeps (the doctrine of *noscitur a sociis*). This rule . . . avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574 (1995) (citations and quotations omitted). Viewed in context, § 6323(h)(1) clearly addresses the requisites for creating a security interest at a given time, stating that such will exist "at any time . . . to the extent that, *at such time*, the holder has parted with money." 26 U.S.C. § 6323(h)(1) (emphasis added). The only authority offered by the Government on this point, *Menotte v. United States* (*In re Garcia*), demonstrates that the statute means that to have an interest, you must have "parted with money or money's worth." No. 01-945-CIV, 2002 WL 31409580, at *5 (S.D. Fla. 2002).

9

The Government has offered no cases adopting its construction of § 6323(h)(1), a construction not supported by the plain language of the statute. Had Congress intended to limit the scope of the security interest via § 6323(h)(1), it could have easily and plainly done so. It did not. *See Old Colony R.R. v. Commissioner*, 284 U.S. 552, 560 (1932) (in interpreting statutory language, "the plain, obvious and rational meaning of a statute is to be preferred to any curious, narrow, hidden sense"). Defendants offer no other basis for this portion of their case which is therefore denied.

IV.     Conclusion

The Court has fully considered all of the parties' arguments and record evidence and finds that Defendants' motion [21] should be granted to the extent that the IRS is dismissed but otherwise denied. Plaintiff's motion [23] is granted. Accordingly, Plaintiff's liens in the subject properties did not merge with legal title, and it therefore maintains liens superior to the IRS's tax liens as to the subject properties. Finally, funds deposited in the registry of the Court pursuant to the November 25, 2008 order [9] are released and must be distributed consistent with the holdings in this order. A separate judgement will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 4th day of November, 2009.

            s/ *Daniel P. Jordan III*
            UNITED STATES DISTRICT JUDGE